UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| WILLIAM SHAYNE THORPE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    4:25-cv-04186-SEM-DJQ |
| | ) |
| TIM WEAVER, et al., | ) |
| | ) |
| Defendants. | ) |

## **ORDER**

Plaintiff, proceeding pro se under 42 U.S.C. § 1983, presently in post-conviction custody at the McDonough County Jail, pursues claims for alleged violations of his constitutional rights at the Jail.

The case is before the Court for a merit review of Plaintiff's complaint. The Court must review Plaintiff's complaint to determine if it is sufficient to proceed. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.*

The Court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). But conclusory statements and labels are

insufficient—the facts alleged must "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

A. Facts

Plaintiff names as Defendants correctional employee Tim Weaver, Sergeant Terry Foulk, Jail Administrator Caitlin Willey, Chief Deputy Sheriff Adam Cremer, Sheriff Nicholas Petitgout, State's Attorney Susan Maxwell, Judge Nigel Graham, and Judge Heidi A. Benson.

Plaintiff was housed in the McDonough County Jail on July 8, 2025, on a domestic battery charge. The victim of the battery had sought a civil order of protection against Plaintiff in McDonough County Case No. 2025OP63. The Court takes judicial notice of specifics related to that case drawn from online McDonough County Circuit Court records. The OP matter was set for a further hearing on the petition for order of protection on July 8, 2025, at 2:00 p.m., before Judge Cavanaugh (not a Defendant here).

Plaintiff notified jail staff well in advance, both verbally and via inmate request, that he wanted to attend the July 8 hearing. Defendant Weaver took Plaintiff to the legal room to await the video

hearing. He was in the legal room for about twenty minutes after the hearing was scheduled to occur. Plaintiff asked passing officers if he could be moved to Holding 1 because there was little ventilation, airflow, and bathroom in the legal room. At first, he was ignored. About fifteen minutes later he asked Weaver again and Weaver said that Holding 1 was in use, so he would take Plaintiff back to Cell Block W3 and come get Plaintiff again when the judge appeared on the screen for the hearing. Plaintiff confirmed that Weaver would come get Plaintiff for the hearing.

An hour later, Plaintiff saw Sergeant Foulk on rounds and asked him why no one got him for the hearing. Foulk said, "You weren't down there, dude." Plaintiff explained that Weaver said he could come get Plaintiff. Foulk said, "He shouldn't have told you that, I'll look into it." Plaintiff told Foulk that he needed to refute the allegations against him and that he could prove the allegations were false, all to assist in his defense of the criminal charges against him. Foulk told Plaintiff that the victim did not appear for the hearing anyway, so the civil order of protection case had been dismissed. The Court records confirm the dismissal.

Plaintiff asked his attorney, girlfriend, and mother to check the court records to see what had happened. Plaintiff wrote a grievance related to the incident. The next day he requested legal library. Usually, detainees are locked in a room with their legal books to study. But on this day, Sergeant Foulk came into the legal room, sat down, and asked Plaintiff why he had filed a grievance against Weaver. Plaintiff said that he was trying to prove his innocence at the civil order of protection hearing. Foulk again noted that the order of protection case had been dismissed. Plaintiff asserted that it was his right to attend the hearing to defend himself. Foulk said, "I heard you did not want to go to the hearing." Plaintiff got agitated and said that was a lie, that Plaintiff had no respect for Foulk, that Foulk had no intestinal fortitude, and that right is right and wrong is wrong. Foulk said that he would handle it if it was wrong. Plaintiff said he intended to go to trial in the criminal case and wanted to prove the victim was a liar. Foulk said that "they can't use it because it was thrown out" and he would appreciate it if Plaintiff "took the grievance off." Plaintiff speculates that Foulk could have been implying that "conditions could be worse" or maybe that Foulk heard the officer saying that Plaintiff said that he did not

want to go to the hearing. The Court notes again that Plaintiff repeatedly asked to be removed from the video hearing room, and it was upon his request that he was removed from the video hearing room. Plaintiff alleges that he took Foulk's statements "as a threat" and signed a form to retract his grievance against Weaver.

Plaintiff proceeded to jury trial in the criminal case on August 28 – 29, 2025. He was found guilty of two counts of aggravated domestic battery by strangulation and one count of domestic battery causing bodily harm with a prior domestic battery conviction. Prosecutors used the victim's sworn order of protection statement against Plaintiff at trial. The victim testified that she had lied, but the jury found Plaintiff guilty based on the order of protection statement and "her ER visit." Plaintiff alleges no other evidence was introduced.

Based on the public record of the criminal case, 2025CF115, the evidence at trial included: 1) the victim's statements for the purpose of medical diagnosis or treatment, 2) Plaintiff's past criminal conviction, 3) sworn video testimony by a physician, Dr. Joseph Calvo, who also was recognized and testified as an expert witness in emergency medicine, 4) a photograph of the victim's

neck, 5) four video exhibits drawn from Sergeant Cremer's body camera, 6) a certified copy of an order of protection, likely the emergency order of protection, issued in 25OP63, admitted without objection, 7) the victim's sworn statement from 25OP63, admitted without objection, 8) the sworn testimony of Sergeant Cremer, 9) the sworn testimony of Nurse William Anderson, 10) sworn testimony from Detective Nick Severs, and 11) a video from Sever's body camera. The trial record also shows the defense rested without presenting any evidence.

Plaintiff believes that if he had attended the civil order of protection hearing, he would have been allowed to present proof, and at that time he would have provided his account of events, and the victim's claims would have been refuted.

Plaintiff alleges the criminal trial judge did not allow Plaintiff (who was represented by an attorney) to bring this and other issues up at a preliminary hearing on July 14.

Plaintiff asks to have his "case thrown out due to them using statements from a hearing I requested to be at … but wasn't due to staff error …." Plaintiff also asks for money damages for violation of his due process rights as well as mental anguish and money

Plaintiff's family apparently incurred, and perhaps is incurring, during his detention and potential imprisonment.

    B. <u>Analysis</u>

    1. Judicial Immunity

Plaintiff sues Judge Nigel Graham and Judge Heidi Benson based on actions or inactions they took in their role presiding over cases within their jurisdiction, in his criminal case. These Defendants are entitled to judicial immunity. *Cossio v. Tourtelot*, 725 F. App'x 406, 410 (7th Cir. 2018). Plaintiff's claims against Judge Nigel Graham and Judge Heidi Benson are therefore dismissed.

    2. Prosecutorial Immunity

Plaintiff sues Assistant State's Attorney Susan Maxwell. Maxwell prosecuted the domestic battery case against Plaintiff. There is no indication that Plaintiff is suing Maxwell for anything other than the actions she took prosecuting Plaintiff in court. These allegations do not state a claim because Maxwell is entitled to prosecutorial immunity. *Foreman v. Wadsworth*, 844 F.3d 620, 624 (7th Cir. 2016). Plaintiff's claims against Maxwell are dismissed.

3. Due Process

Plaintiff frames his complaint as the denial of a due process right to attend the civil order of protection hearing.

"When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in 'life, liberty, or property' without due process of law." *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)).

Plaintiff cannot make that showing here because he was not deprived of anything at the hearing that he missed – the petition was dismissed, and no relief was granted against him. Plaintiff therefore has not alleged a plausible due process claim.

5. First Amendment Access to Courts

Plaintiff's claim may also be characterized as a denial of access to the courts in violation of the First Amendment. The Seventh Circuit uses "a two-part test to decide" whether detention officials "violated the right of access to the courts." *Gentry v. Duckworth*, 65 F.3d 555, 558 (7th Cir. 1995). First, the plaintiff must show that officials failed to provide meaningful access to the materials or

processes needed to participate in their court proceedings. *Id.* Second, he must show "some quantum of detriment caused by the challenged conduct of state officials …." *Gentry*, 65 F.3d at 558.

Plaintiff has not plausibly pleaded either element. Plaintiff wanted to be present for the order of protection hearing. Upon his request, he was brought to the hearing room by jail staff. Plaintiff then repeatedly asked to be removed from the hearing room, and eventually he was so removed, again, at his request. Defendant Weaver is alleged to have said he would bring Plaintiff back once the judge appeared on the screen. But Plaintiff had already been brought to the hearing room and knew that was where he needed to be to participate in the hearing. There is significant doubt whether Plaintiff could state a claim against Weaver given Plaintiff voluntarily absented himself from the hearing room.

Imagine Plaintiff had not been in custody, but had instead attended court in person, and found the courtroom claustrophobic as he waited for the hearing, so he stepped outside the courthouse. The same result may well have occurred in that scenario because, when the hearing was ultimately called, the order of protection petitioner would have failed to appear or voluntarily dismissed the

case and the hearing would have rapidly ended, in Plaintiff's favor, whether he was present or not.

This brings the Court to the second element Plaintiff must allege, which is that Plaintiff suffered some sort of legal prejudice. Plaintiff has not done so. When the order of protection case was eventually called for hearing, the victim/petitioner either did not appear, or appeared and dropped the case. Based on the Court's experience in presiding over many such hearings, that hearing likely lasted somewhere between a few seconds and perhaps a minute. It is extremely unlikely that the judge presiding over that hearing would have entertained the presentation of any evidence from Plaintiff given that the suit was being dismissed.

Plaintiff was not entitled to force his domestic battery victim to pursue an order of protection solely so he could prove her allegations false, to generate evidence for later use in his criminal defense case. Moreover, Plaintiff had a constitutional right to testify at his criminal trial, and did not exercise that right. And the victim testified at Plaintiff's criminal trial and told the jury that she had lied in her petition for an order of protection, apparently the same concession that Plaintiff had intended to draw at the order of

protection hearing. It is impossible to imagine how Plaintiff could have been legally prejudiced by missing the order of protection hearing, on these facts.

The decision on whether to allow certain material into evidence at the criminal trial – such as the victim's sworn statement filed with her petition for order of protection – was up to the criminal trial judge. The trial judge allowed that statement into evidence without objection. But even if there had been an objection, with the victim testifying in the criminal trial that she had lied in pursuing the order of protection, the rules of evidence would absolutely provide for the admission into evidence of her prior sworn inconsistent statement regardless of anything that could have happened at the order of protection hearing.

Plaintiff's allegations do not support a First Amendment claim for denial of access to the courts.

6. First Amendment Retaliation

Plaintiff could also intend to pursue a First Amendment retaliation claim. He alleges that Foulk came and spoke to him about the grievance Plaintiff filed against Weaver. Plaintiff is correct that the First Amendment protects him from adverse actions for

filing a grievance, *Daugherty v. Harrington*, 906 F.3d 606, 610 (7th Cir. 2018), so long as the grievance is not frivolous. *See Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016). But Plaintiff's allegations simply do not state a First Amendment retaliation claim. On the contrary, his allegations indicate that Foulk was polite to Plaintiff despite Plaintiff losing his temper and insulting Foulk repeatedly. Plaintiff writes that when Foulk said, "They can't use it because it was thrown out" and that he would appreciate it if Plaintiff "took the grievance off," Plaintiff believed these were veiled or implied threats of some nature. But Plaintiff does not say how those statements could be reasonably taken as a threat, what the threatened retaliation was, or any other information that indicates that Plaintiff was faced with a deprivation likely to deter a person of ordinary firmness from engaging in future protected activity.

His allegations do not state a claim for First Amendment retaliation. *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011).

7. Release from Custody

As a final note, Plaintiff requests dismissal of his criminal case, among the remedies he seeks. This lawsuit is not the correct legal vehicle to challenge his criminal conviction. Plaintiff must first

avail himself of all available remedies in the Illinois courts. If unsuccessful, and provided he meets all applicable filing deadlines in the Illinois courts, he could possibly pursue a petition for a writ of habeas corpus in federal court. But he cannot pursue release from custody or dismissal of state court proceedings in this action, on the facts that he has alleged here. *O'Keefe v. Chisholm*, 769 F.3d 936, 939 (7th Cir. 2014).

IT IS THEREFORE ORDERED:

1. Pursuant to its merit review of the Complaint under 28 U.S.C. § 1915A, the Court finds Plaintiff has failed to state a claim. The Complaint is dismissed.

2. Plaintiff is granted 30 days to file an amended complaint if he so desires, if he believes in good faith that he can state a plausible claim for relief.

Entered this 7th day of November, 2025.

>            *s/Sue E. Myerscough*
>            SUE E. MYERSCOUGH
>      UNITED STATES DISTRICT JUDGE